Electronically FILED by Superior Court of California, County of Los Angeles on 02/26/2021 05:46 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton, Deputy Clerk
21STCV07940

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Thomas Long

John Carpenter, Esq. (SBN 155539)
carpenter@czrlaw.com
Carlos A. Hernandez, Esq. (SBN 316905)
chernandez@czrlaw.com
Matthew J. Singer, Esq. (SBN 327860)
msinger@czrlaw.com
**CARPENTER, ZUCKERMAN & ROWLEY**
8827 West Olympic Boulevard
Beverly Hills, CA 90211-3613
Telephone: (310) 273-1230
Fax: (310) 858-1063

Sara Azari, Esq. (SBN 237987)
sara@azarilaw.com
**LAW OFFICE OF SARA AZARI**
333 S. Hope Street, 40th Floor
Los Angeles, CA 90071
Telephone: (213) 622-5000
Fax: (213) 254-0555

Attorneys for Plaintiffs

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ALEJANDRA GARCIA, an Individual; CHANCE BROWN, an Individual; STEPHEN THOMPSON, an Individual; ERICK HERRERA, an Individual; KARISSA PEREZ, an Individual; DIANA SALAZAR, an Individual; CHRISTOPHER PEARL, an Individual; BRANDON GAVIRIA, an Individual; AMANDA FLORES, an Individual; OSVALDO PEREZ, an Individual; MARK ESCALANTE, an Individual; KIMBERLY QUITZON, an Individual; KATHERINE GERBASI, an Individual; BRENDON SMITH, an Individual; DANYELLE LEAH SIMS, an Individual; KEVIN JESUS RUIZ, an Individual; ELVER HERNANDEZ, an Individual; PARIS WASHINGTON, an Individual; JACQUELINE WUNG, an Individual; ERIC WILSON, an Individual; AARON WALKER MATIS, an Individual; LACRAMIOARA MUNTEAN, an Individual; KENT VILLA, an Individual; JASMIN RINCON, an Individual; ELIZABETH TOOLEY, an Individual; | Case No.: 21STCV07940 **PLAINTIFF'S COMPLAINT ASSERTING CAUSES OF ACTION FOR:** **1. VIOLATIONS OF THE BANE CIVIL RIGHTS ACT (Civ. Code § 52.1);** **2. VIOLATIONS OF THE UNRUH ACT (Civ. Code § 51, _et seq._)** **3. 42 U.S.C. § 1983: FIRST AMENDMENT** **4. 42 U.S.C. § 1983: FOURTH AMENDMENT** **5. 42 U.S.C. § 1983: FIFTH AND FOURTEENTH AMENDMENT** **6. ASSAULT AND BATTERY** **7. FALSE IMPRISONMENT** **8. NEGLIGENCE** **9. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |

1

**EXHIBIT A**

9

1  ARIANA WILLINGHAM, an Individual;
   ALICIA REYNA, an Individual; ARIA
2  SONORA SILVA-ESPINOSA, an Individual;
   TIMOTHY FULTON, an Individual;
3  SAMANTHA DE LEON, an Individual;
4  MORGAN FANGUE, an Individual;
   LESLYE ALANIZ, an Individual;
5  KATHERINE GRAY, an Individual;
   KATELYNN RHOADS, an Individual;
6  GRACE EVELYN BOWLAND, an
   Individual; ENRICO MAGHELLI, an
7  Individual; DAVID CARMICHAEL, an
8  Individual; and ALYCIA LOURIM, an
   Individual;
9
               Plaintiffs,
10
11            vs.

12 CITY OF LOS ANGELES, a Public Entity;
   LOS ANGELES POLICE DEPARTMENT,
13 a Public Entity; COUNTY OF LOS
   ANGELES, a Public Entity; LOS ANGELES
14 COUNTY SHERIFF'S DEPARTMENT, a
   Public Entity; CITY OF SANTA MONICA,
15 a public entity; SANTA MONICA POLICE
16 DEPARTMENT, a public entity; CITY OF
   BEVERLY HILLS, a public entity;
17 BEVERLY HILLS POLICE
   DEPARTMENT, a public entity; and DOES
18 1 through 100, inclusive,
19
               Defendants.
20

**10. VIOLATIONS OF THE RALPH CIVIL RIGHTS ACT (Civ. Code § 51.7)**


**\*\*DEMAND FOR JURY TRIAL\*\***

21
22      COMES NOW, Plaintiffs ALEJANDRA GARCIA, an Individual; CHANCE BROWN, an

23 Individual; STEPHEN THOMPSON, an Individual; ERICK HERRERA, an Individual; KARISSA

   PEREZ, an Individual; DIANA SALAZAR, an Individual; CHRISTOPHER PEARL, an
24
   Individual; BRANDON GAVIRIA, an Individual; AMANDA FLORES, an Individual; OSVALDO
25
   PEREZ, an Individual; MARK ESCALANTE, an Individual; KIMBERLY QUITZON, an
26
   Individual; KATHERINE GERBASI, an Individual; BRENDON SMITH, an Individual;
27
28 DANYELLE LEAH SIMS, an Individual; KEVIN JESUS RUIZ, an Individual; ELVER

2

**EXHIBIT A**  10

1  HERNANDEZ, an Individual; PARIS WASHINGTON, an Individual; JACQUELINE WUNG, an

2  Individual; ERIC WILSON, an Individual; AARON WALKER MATIS, an Individual;

3  LACRAMIOARA MUNTEAN, an Individual; KENT VILLA, an Individual; JASMIN RINCON,

4  an Individual; ELIZABETH TOOLEY, an Individual; ARIANA WILLINGHAM, an Individual;

5  ALICIA REYNA, an Individual; ARIA SONORA SILVA-ESPINOSA, an Individual; TIMOTHY

6  FULTON, an Individual; SAMANTHA DE LEON, an Individual; MORGAN FANGUE, an

7  Individual; LESLYE ALANIZ, an Individual; KATHERINE GRAY, an Individual; KATELYNN

8  RHOADS, an Individual; GRACE EVELYN BOWLAND, an Individual; ENRICO MAGHELLI,

9  an Individual; DAVID CARMICHAEL, an Individual; and ALYCIA LOURIM, an Individual

10  (hereinafter collectively referred to as "Plaintiffs"), who complain and allege against the

11  defendants, CITY OF LOS ANGELES, a Public Entity; LOS ANGELES POLICE

12  DEPARTMENT, a Public Entity; COUNTY OF LOS ANGELES, a Public Entity; LOS ANGELES

13  COUNTY SHERIFF'S DEPARTMENT, a Public Entity; CITY OF SANTA MONICA, a public

14  entity; SANTA MONICA POLICE DEPARTMENT, a public entity; CITY OF BEVERLY HILLS,

15  a public entity; BEVERLY HILLS POLICE DEPARTMENT, a public entity; and each of them,

16  including, DOES 1 through 100, inclusive, (hereafter collectively referred to as "Defendants"), the

17  following:

18  **INTRODUCTION**

19      1.    The path to justice begins with the truth. When the government enacts and enforces

20  an illegal curfew to infringe on an individual's expression of the truth, it creates a tool of

21  oppression to benefit those peddling a false narrative and undermines the foundation of our society.

22      2.    The California State Constitution protects the rights of people to lawfully protest.

23  Section 2 (a) of the California State Constitution states that "Every person may freely speak, write

24  and publish his or her sentiments on all subjects, being responsible for the abuse of this right.  A

25  law may not restrain or abridge liberty of speech or press".  The First Amendment of the United

26  States Constitution also guarantees free expression of speech and the act of assembly through the

27  Fourteenth Amendment.  Article 1, Section 3(a) of the California Constitution plainly states: "The

28  people have the right to instruct their representatives, petition government for redress of grievances,

1    and <u>assemble freely to consult for the common good</u>." Cal. Const., Art. 1, § 3(a).

2        3.      Despite the plain language protection granted through federal and state constitutions

3    alike, the Defendants City of Los Angeles, County of Los Angeles, City of Santa Monica, City of

4    Beverly Hills and other municipalities throughout California have taken direct action to silence the

5    voices of the oppressed.  An illegal curfew, violative of, Plaintiffs', without limitation, First,

6    Fourth, and Fourteenth Amendment rights pursuant to the United States Constitution, as well as the

7    reciprocal iterations in the California Constitution, has been implemented and weaponized to chill

8    the calls of government grievance.  Its purpose was to create a lasting chilling effect on the lawful

9    exercise of speech, stopping individuals from participation in peaceful assembly.  Under the guise

10   of action to stop looting, mass arrests were made of people committing no crime but speaking truth

11   to power.  Executive direction was used against people simply exercising their right to free speech.

12       4.      This action arises out of the protests across the nation following the murder of

13   George Floyd by officers with the Minneapolis Police Department, as well as the many documented

14   cases of police violence against and murder of black and brown people in California and across the

15   Nation. Beginning on or about May 30, 2020, protests erupted all across the United States, with

16   many of the larger demonstrations occurring in the County of Los Angeles. In response to mass

17   protest of police violence, Defendants arrested thousands of individuals simply exercising the right

18   to free speech and peaceful assembly.

19       5.      Defendants, without limitation, kettled demonstrators unleashed batons, rubber-

20   cased bullets, tear gas, flashbang grenades, and sound cannons; detained peaceful protestors; kept

21   protestors tightly handcuffed on buses for hours, without access to bathroom facilities, water or

22   food; drove demonstrators miles from their place of detainment and released them without means of

23   transportation back at a time in further violation of the illegal curfew upon which they were first

24   detained; harassed, humiliated, abused, assaulted, and falsely imprisoned demonstrators, all while

25   weaponizing the COVID-19 virus.

26                                    **THE PARTIES**

27       6.      Plaintiff ALEJANDRA GARCIA ("Plaintiff Garcia"), is now, and at all times

28   mentioned herein was, a resident of the County of Los Angeles, State of California.

---

7.    Plaintiff CHANCE BROWN ("Plaintiff Brown"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

8.    Plaintiff STEPHEN THOMPSON ("Plaintiff Thompson"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

9.    Plaintiff ERICK HERRERA ("Plaintiff Herrera"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

10.    Plaintiff KARISSA PEREZ ("Plaintiff K. Perez"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

11.    Plaintiff DIANA SALAZAR ("Plaintiff Salazar"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

12.    Plaintiff CHRISTOPHER PEARL ("Plaintiff Pearl"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

13.    Plaintiff BRANDON GAVIRIA ("Plaintiff Gaviria"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

14.    Plaintiff AMANDA FLORES ("Plaintiff Flores"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

15.    Plaintiff OSVALDO PEREZ ("Plaintiff O. Perez"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

16.    Plaintiff MARK ESCALANTE ("Plaintiff Escalante"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

17.    Plaintiff KIMBERLY QUITZON ("Plaintiff Quitzon"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

18.    Plaintiff KATHERINE GERBASI ("Plaintiff Gerbasi"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

19.    Plaintiff BRENDON SMITH ("Plaintiff Smith"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

20.    Plaintiff DANYELLE LEAH SIMS ("Plaintiff Sims"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

**EXHIBIT A**

21.     Plaintiff KEVIN JESUS RUIZ ("Plaintiff Ruiz"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

22.     Plaintiff ELVER HERNANDEZ ("Plaintiff Hernandez"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

23.     Plaintiff PARIS WASHINGTON ("Plaintiff Washington"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

24.     Plaintiff JACQUELINE WUNG ("Plaintiff Wung"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

25.     Plaintiff ERIC WILSON ("Plaintiff Wilson"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

26.     Plaintiff AARON WALKER MATIS ("Plaintiff Matis"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

27.     Plaintiff LACRAMIOARA MUNTEAN ("Plaintiff Muntean"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

28.     Plaintiff KENT VILLA ("Plaintiff Villa"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

29.     Plaintiff JASMIN RINCON ("Plaintiff Rincon"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

30.     Plaintiff ELIZABETH TOOLEY ("Plaintiff Tooley"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

31.     Plaintiff ARIANA WILLINGHAM ("Plaintiff Willingham"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

32.     Plaintiff ALICIA REYNA ("Plaintiff Reyna"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

33.     Plaintiff ARIA SONORA SILVA-ESPINOSA ("Plaintiff Silva-Espinosa"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

34.     Plaintiff TIMOTHY FULTON ("Plaintiff Fulton"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

6

**EXHIBIT A**

14

35.     Plaintiff SAMANTHA DE LEON ("Plaintiff De Leon"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

36.     Plaintiff MORGAN FANGUE ("Plaintiff Fangue"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

37.     Plaintiff LESLYE ALANIZ ("Plaintiff Alaniz"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

38.     Plaintiff KATHERINE GRAY ("Plaintiff Gray"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

39.     Plaintiff KATELYNN RHOADS ("Plaintiff Rhoads"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

40.     Plaintiff GRACE EVELYN BOWLAND ("Plaintiff Bowland"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

41.     Plaintiff ENRICO MAGHELLI ("Plaintiff Maghelli"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

42.     Plaintiff DAVID CARMICHAEL ("Plaintiff Carmichael"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

43.     Plaintiff ALYCIA LOURIM ("Plaintiff Lourim"), is now, and at all times mentioned herein was, a resident of the County of Los Angeles, State of California.

44.     Defendant, CITY OF LOS ANGELES, is and was at all relevant times a public entity as defined under Government Code § 811.2, and is organized, recognized, and existing under, and by virtue of, the laws of the State of California.

45.     Defendant, LOS ANGELES POLICE DEPARTMENT ("LAPD"), is and was at all relevant times a public entity as defined under Government Code § 811.2, and is organized, recognized, and existing under, and by virtue of, the laws of the State of California, and operating under the direction and authority of Defendant CITY OF LOS ANGELES.

46.     Defendant, COUNTY OF LOS ANGELES, is and was at all relevant times a public entity as defined under Government Code § 811.2, and is organized, recognized, and existing under, and by virtue of, the laws of the State of California.

47.     Defendant, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ("LA SHERIFF"), is and was at all relevant times a public entity as defined under Government Code § 811.2, and is organized, recognized, and existing under, and by virtue of, the laws of the State of California, and operating under the direction and authority of Defendant COUNTY OF LOS ANGELES.

48.     Defendant, CITY OF SANTA MONICA, is and was at all relevant times a public entity as defined under Government Code § 811.2, and is organized, recognized, and existing under, and by virtue of, the laws of the State of California.

49.     Defendant, SANTA MONICA POLICE DEPARTMENT ("SMPD"), is and was at all relevant times a public entity as defined under Government Code § 811.2, and is organized, recognized, and existing under, and by virtue of, the laws of the State of California, and operating under the direction and authority of Defendant CITY OF SANTA MONICA.

50.     Defendant, CITY OF BEVERLY HILLS, is and was at all relevant times a public entity as defined under Government Code § 811.2, and is organized, recognized, and existing under, and by virtue of, the laws of the State of California.

51.     Defendant, BEVERLY HILLS POLICE DEPARTMENT ("BHPD"), is and was at all relevant times a public entity as defined under Government Code § 811.2, and is organized, recognized, and existing under, and by virtue of, the laws of the State of California, and operating under the direction and authority of Defendant CITY OF BEVERLY HILLS.

52.     The true names and/or capacities, whether individual, corporate, associate, or otherwise, of the defendants DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of these defendants fictitiously named herein as a DOE is legally responsible, negligent, or in some other actionable manner, liable for the events and happenings hereinafter alleged, and proximately and legally caused injuries and damages to Plaintiffs herein alleged. Plaintiffs will seek leave of court to amend this Complaint to insert the true names and/or capacities of such fictitiously named defendants when the same have been ascertained.

**EXHIBIT A**     16

53.     Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, the defendants, and each of them, including DOES 1 through 100, were the agents, servants, employees, and/or joint venturers of their co-defendants, and were acting within the course, scope, and authority of said agency, employment, and/or venture. At all times Defendants were acting under color of state law.

54.     Plaintiffs are informed, believe, and thereupon allege that the practices, policies, and customs of Defendants CITY OF LOS ANGELES, LAPD, COUNTY OF LOS ANGELES, LA SHERIFF, CITY OF SANTA MONICA, SMPD, CITY OF BEVERLY HILLS, BHPD, and DOES 1 through 100, inclusive, caused the unlawful action taken against Plaintiffs

55.     Within the time provided by law, Plaintiffs each filed a claim with Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF SANTA MONICA, and CITY OF BEVERLY HILLS, respective of their individual damages, in full compliance with California Government Code § 910, *et seq*. and the specific requirements of Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF SANTA MONICA, and CITY OF BEVERLY HILLS. Plaintiffs received either received rejections or no response to their respective claims, and as such, each claim has been deemed rejected by operation of law pursuant to California Government Code § 912.4. This Complaint is brought in timely response to the explicit and/or implicit rejections of Plaintiffs claims against Defendants.

## JURISDICTION AND VENUE

56.     This Court has jurisdiction because the alleged acts and omissions giving rise to the allegations contained herein occurred in the State of California, County of Los Angeles and the Defendants either live in or conduct business in the State of California, County of Los Angeles.

57.     Venue is proper in this county in accordance with California Code of Civil Procedure §§ 395(a) and 395.5 because the obligation or liability arose in this county and breaches occurred in this county.

## GENERAL ALLEGATIONS

58.     On May 25, 2020, Minneapolis Police Officer Derek Chauvin murdered George Floyd, suspected of forgery for attempting to use a purported counterfeit $20 bill. Officer Chauvin,

**EXHIBIT A**          17

1  along with two other officers, held Mr. Floyd on the ground, handcuffed behind his back, and

2  ignored pleas to get off his neck, back and legs and let him breathe. Mr. Floyd died in the

3  Minneapolis street after approximately 7 minutes and 46 seconds of Officer Chauvin holding a knee

4  to his neck and stating more than 20 times that he could not breathe.

5          59.    The death of George Floyd ignited protests across the United States and world, with

6  tens of thousands of demonstrators participating in awful and peaceful protests in, among others,

7  the City of Los Angeles, the City of Santa Monica, the City of Beverly Hills.  Defendants

8  responded to all demonstrators who came out to express their opposition to a police state to the very

9  police state they came to protest, with expansive curfews and arrests for failing to comply with the

10  curfews, failing to disperse, unlawful assembly, failure to follow a "lawful" order of an officer and

11  similar misdemeanors undercutting the right to engage in protected expressive activity in public

12  spaces.

13          60.    California Penal Code § 409, defining an unlawful assembly, has repeatedly been

14  construed to require a showing of imminent violence that so permeates a lawful expressive activity

15  that law enforcement may curtail the rights of all. Those facts did not exist in this instance. Instead,

16  Defendants applied a ham-handed approach, silencing everyone.

17          61.    On or about May 30, 2020, and lasting through, without limitation, June 12, 2020,

18  the Defendants implemented and enforced an illegal curfew, facially infringing upon the State and

19  Federal constitutional rights of lawful protestors, including, without limitation, Plaintiffs First,

20  Fourth, and Fourteenth Amendment rights.  This curfew was used to trap protestors and enact

21  sweeping arrests.

22          62.    Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF

23  SANTA MONICA, and CITY OF BEVERLY HILLS, working together with Defendants LAPD,

24  LA SHERIFF, SMPD, and BHPD respectively, dressed for the chaos they created, performed

25  "kettling" tactics, wherein demonstrators attempting to disperse prior to the curfew's enforcement

26  were directed down winding paths and corralled into an inescapable crowd.  Boxed-in by officers

27  clad in riot gear and wielding, without limitation, batons, rubber-cased bullets, tear gas, flashbang

28  grenades, and sound cannons, peaceful protestors were attacked, mobbed, and unlawfully detained

**EXHIBIT A**

PLAINTIFFS' COMPLAINT FOR DAMAGES

1    and arrested.  The Defendants worked in concert for the correlated suppression of truthful speech.

2        63.    After being thrust into a police-powered chaos, Plaintiffs were, without limitation,

3    detained and questioned without a reading of their Miranda Rights, forced to the ground, and bound

4    with zip-ties. Plaintiffs were bound for a minimum of several hours, with some held for more than

5    12 hours in intolerable and painful conditions. The zip-ties were intentionally tightened behind

6    Plaintiffs' backs, causing limbs to go numb, turn blue, and triggering swelling and bruising.  In

7    some cases, significant nerve damage has been noted.  Plaintiffs repeatedly made calls to the

8    officers involved to loosen their bindings but were met with hostility and refusal.

9        64.    Plaintiffs were rounded up, separated by perceived gender, placed on buses, and

10   driven from their place of arrest to undisclosed locations.  Upon information and belief, some of the

11   buses used had been commandeered from The Los Angeles County Metropolitan Transportation

12   Authority and similar entities.  Despite questions from Plaintiffs of where they were being taken, no

13   information was ever provided.

14       65.    Some of Defendants' transport buses carried Plaintiffs to police stations around the

15   Cities of Los Angeles, Santa Monica and Beverly Hills for processing. Additionally, some of

16   Defendants' transport buses unwittingly carried Plaintiffs to the Los Angeles National Cemetery.

17   This location was used to harass, intimidate, and cause the intentional infliction of emotional

18   distress to those arrested for peacefully protesting the systemic mistreatment of people of color.

19       66.    Plaintiffs were held on their transport buses for excessive periods of time.  With

20   arrests beginning as early as 6:00 p.m., many of the detained were not released until at or about

21   3:00 the following morning.  Having been driven distances in excess of twenty miles from the place

22   of arrest, Plaintiffs were left in unfamiliar areas without transportation during an active curfew. As

23   such, Defendants were exposing Plaintiffs to further arrest for violation of the curfew that had them

24   illegally arrested and transported in the first place.

25       67.    Over the course of their detention, Plaintiffs were routinely denied food, water,

26   access to bathrooms, and in some cases access to lawyers, despite repeated request. Plaintiffs were

27   forced to urinate on themselves after hours of unlawful detainment, causing severe emotional

28   distress and humiliation.

68.     Defendants instituted systematic efforts of torture and ridicule throughout Plaintiffs' detention.  This includes, without limitation, verbal abuse, sexual harassment and assault, use of excessive force, false imprisonment, and acts of harassment, such as playing copyrighted materials such as "Africa" by Toto, "LA Is Burning" by Bad Religion to interfere with Plaintiffs' ability to publicly post videos of their unlawful treatment.  Defendants further manipulated the temperature, deprived many Plaintiffs access to bathroom facilities, and deprived many Plaintiffs of water to create heightened levels of distress.

69.     Additionally, many Plaintiffs were intentionally left in close quarters with officers not wearing masks.  Social distancing and sanitation guidelines were ignored.  Bound behind their backs with zip-ties, Plaintiffs were unable to adjust their fallen masks despite making clear effort to limit their exposure to the COVID-19 virus. As such, Defendants weaponized the COVID-19 virus as punishment for the expression of truthful speech.

70.     Defendants have been vested with the mandatory duties stated herein.  Instead, Defendants weaponized their authority and violated their mandatory and statutory duty.  Pursuant to, without limitation, Government Code §§ 815.2 and 815.6, these public entities are liable injuries they proximately caused to claimants.

71.     The blanket decision of Defendants to deny Plaintiffs' liberty and detain them without justification for prolonged times violates, without limitation, the First, Fourth, Fifth and Fourteenth Amendment rights of Plaintiffs, and was done with the specific and deliberate intent to interfere with the exercise of Plaintiffs' rights to assembly and due process. Additionally, the blanket restriction on all movement during those hours violates the Constitution's protection for freedom of movement. And, as written and implemented, the curfews fail to provide constitutionally sufficient notice

72.     Defendants had ready alternatives to the prolonged detention of Plaintiffs in tight zip-ties, without access to bathrooms, food or water. In the Ferguson protests in 2014, protesting the wrongful death of Michael Brown, the LAPD detained a group of approximately 40-50 protestors at Beverly and Alvarado, kettled them, handcuffed them with twist-ties, brought in computers and video recording equipment, collected the same information as would be done in a booking, then

**EXHIBIT A**

PLAINTIFFS' COMPLAINT FOR DAMAGES

released them with orders to disperse and advised the detainees that they would be taken to jail and held if they were found again that night in violation of the dispersal order. In all, people were handcuffed no longer than approximately one hour. <u>No one suffered injury as a result of the prolonged tight handcuffing and, significantly, no one was a repeat offender that night or any other night as the demonstrations continued.</u> The officers patted down the demonstrators' clothing and searched their personal belongings, including backpacks, as they would do if they were taking them into custody for booking. LAPD officers ran wants and warrants on each detainee in the field, as they do for any traffic stop and as they routinely do with unhoused individuals in the city.

73.     Penal Code § 853.6 imposes a mandatory requirement to release misdemeanor violators on their own recognizance in the field or immediately after booking unless individualized probable cause exists to believe that one or more exceptions to the statute exists as a basis to deny release. In this instance, there was no reason why Defendants could not process individuals in the field and release them without the prolonged handcuffing. Both § 853.6 by statute and the First Amendment by constitutional principle require individualized suspicion before fundamental rights may be denied. There was no reasonable basis to believe that each and every one of the Plaintiffs would engage in a similar purported misdemeanor violation if they had been cited and released in the field. Defendants had the capacity to process arrestees in the field. Plaintiffs were denied the individualized assessment of criminal liability that is the hallmark of due process and each had their liberty unlawfully restricted as a result of a deliberate decision by Defendants to ignore the explicit command of Penal Code § 853.6.

74.     The first curfew orders were issued on or about May 30, 2020 at 6:30pm, prohibiting any person from leaving their homes and navigating the public streets and all public areas within the city limits of Los Angeles from 8pm to 5:30am. Similar orders were instated in the City of Santa Monica and the City of Beverly Hills. The orders contained a few narrow exceptions, such as for travel to work, travel by certain officials (including law enforcement), and for medical care. However, it did not exempt a broad swath of entirely innocuous activity, including grocery shopping, caring for relatives, and recreational jogging, bike-riding, or dog-walking. It also included no exception for lawful protest, individual free speech and/or members of the press. A

1    second curfew order was issued on May 31, 2020 at 12:00pm, prohibiting any person from leaving

2    their homes and navigating the public streets from 8:00pm to 5:30am. It included an exception for

3    credentialed media but no other additional material exemptions. On June 1, 2020, another curfew

4    order was announced at around 12pm, restricting people from leaving their homes from 6pm to

5    6am. On June 2, 2020, another curfew order was issued at around 1pm, prohibiting persons from

6    leaving their homes from 6pm to 6am. And on June 3, 2020, a fifth curfew order was issued at

7    around 1pm, prohibiting people from leaving their homes from 9pm to 5am.

8         75.    Defendant County of Los Angeles issued a separate curfew order, signed by County

9    Supervisor Barger on May 31, 2020. The order prohibited any person from leaving their home and

10   navigating the public streets within the entire unincorporated and incorporated areas of Los Angeles

11   County from 6pm to 6am. It too contained only the narrowest of exemptions, including no lawful

12   protest, individual free speech and/or press exemption. On June 1 and June 2, 2020 similar curfew

13   orders were issued prohibiting any persons from leaving their homes from 6pm to 6am. These

14   added an exemption for credentialed press, but again no others. And on June 3, 2020, at around

15   1pm a countywide curfew was issued to go into effect from 9pm to 5am.

16        76.    Law enforcement officials throughout the County of Los Angeles vigorously

17   enforced the curfews, arresting hundreds of people lawfully and peacefully protesting, as well as

18   simply existing outside not demonstrating. According to the Los Angeles Chief of Police, LAPD

19   officers alone arrested more than 2,700 individuals over a span of four days (May 29 to June 2).

20   2,500 of these arrests (92%) were for curfew violations. It is therefore clear that the overwhelming

21   majority of the arrests that law enforcement officials made were completely unrelated to any act of

22   property damage or violence.

23        77.    On February 9, 2021, VICE News first reported that the Beverly Hills Police

24   Department had been filmed playing copyrighted music when individuals attempted to record their

25   encounters with law enforcement in an effort to trigger Instagram and related social media platform

26   copyright filters. *See* https://www.vice.com/en/article/bvxb94/is-this-beverly-hills-cop-playing-

27   sublimes-santeria-to-avoid-being-livestreamed; *See also*

28   https://www.vice.com/en/article/bvxa7q/new-video-shows-beverly-hills-cops-playing-beatles-to-

PLAINTIFFS' COMPLAINT FOR DAMAGES

1  trigger-instagram-copyright-filter. It has been reported that this effort by Defendant BHPD to

2  trigger copyright filters has been used to ensure that individuals can neither live stream nor post

3  their law enforcement interactions, making all incident details reliant on the related police report or

4  bodycam footage, if the officer's bodycam had been recording as is required. Additionally, officers

5  are able to submit claims directly to Instagram and related social media platforms claiming

6  copyright infringement if their initial efforts for algorithmic deletion don't pan out.

7       78.     Upon information and belief, as stated herein, Defendants, and each of them, played

8  songs including, without limitation, "Africa" by Toto and "LA Is Burning" by Bad Religion over

9  the transport bus sound systems in an effort to trigger copyright filters on Instagram and related

10  social media platforms. Despite binding Plaintiffs' hands behind their backs, Defendants exercised

11  this additional effort to ensure that no Plaintiff was able to successfully record and/or live-stream

12  their multi-hour detention.

13       79.     Plaintiffs are informed and believe and thereon allege that the officers of Defendants

14  LAPD, LA Sheriff, SMPD, and BHPD acted in accordance with orders given by supervisors from

15  the highest command positions, in accordance with policies and procedures instituted by the LAPD,

16  LA Sheriff, SMPD, BHPD, City of Los Angeles, County of Los Angeles, City of Santa Monica and

17  City of Beverly Hills.

18       80.     Moreover, on or about June 12, 2020, Plaintiff Garcia acted as a medic at a peaceful

19  protest within the City of Beverly Hills. BHPD officers identified her as a medic, evidenced by

20  physical signifiers and a medical bag on Plaintiff Garcia's person, and specifically targeted her with

21  acts of excessive force to limit her ability to treat injured protestors. BHPD officers proceeded to

22  shoot Plaintiff Garcia at minimum two times with rubber-cased bullets, threw tear gas canisters

23  within a dangerous proximity, and kept Plaintiff Garcia and other Plaintiffs kettled within a small

24  public area while utilizing a Long Range Acoustic Device. BHPD Officers then attempted to follow

25  Plaintiff Garcia to her home, outside the Beverly Hills jurisdiction, in an effort to intimidate and

26  harass.

27       81.     On or about June 26, 2020, Plaintiff Garcia was further subjected to excessive force,

28  wherein officers of the Defendant BHPD brutally beat, gassed, and again targeted her with a Long

**EXHIBIT A**            23

1  Range Acoustic Device while peacefully protesting. Defendant BHPD justified the force in

2  response to violations of an illegal curfew designed to suppress Plaintiff Garcia's free speech.

3  Plaintiff Garcia was then wrongfully detained alone in a cell for an excessive 26 hours, without ever

4  receiving food or water. Defendant BHPD officers were emotionally abusive, utilizing slurs and

5  fabricating reasons as to why Plaintiff Garcia was being held in far excess of other detained

6  protestors. Plaintiff Garcia was subjected to a custodial interrogation without being read her

7  Miranda rights and was denied counsel after explicit request.

8      82.    Similar to physical injuries sustained by all Plaintiffs as a result of Defendants'

9  excessive force, Plaintiff Garcia received physical injuries to her person as a result of the multiple

10  rubber-cased bullets discharged against her, breathing difficulty as a result of the tear gassed

11  unreasonably unleashed, eye sight difficulty as a result of the same, and significant emotional

12  distress and anxiety as a result of the targeted attacks, intimidation, and harassment of Defendant

13  BHPD officers. Moreover, Plaintiff Garcia's shoulder was popped/dislocated as a result of being

14  dragged by Defendant BHPD officers. Plaintiff Garcia was further subjected to emotional torture

15  when, without limitation, she was lied to about why she was being held, told she was left and

16  forgotten by other detainees and Plaintiffs, never given a phone call until more than 26 hours

17  following onset of detainment, isolated in solitary confinement for the entire 26 hour period, not

18  provided food or water, and subjected to an illegal interrogation.

19      83.    Other Plaintiffs sustained severe and lasting physical injuries and emotional distress

20  as a result of Defendants' excessive force, use of rubber-case bullets, bean bag projectiles, batons,

21  tear gas, sound cannons and other long range acoustic devices. Defendants loaded guns in front of

22  Plaintiffs, cocked them in an effort to intimidate and harass, and aimed at Plaintiffs in close range.

23  Plaintiffs had no way of knowing whether the weapons loaded and aimed by Defendants had been

24  loaded with "non-lethal" ammunition. **Rather, while protesting the police murder of an**

25  **unarmed person, these unarmed Plaintiffs were forced to reckon with excessive force and the**

26  **fear of imminent death and/or unlawful incarceration at the hands of law enforcement.**

27      84.    As a direct and proximate cause of the conduct described herein, Plaintiffs have been

28  denied their constitutional statutory, and legal rights as stated herein, and have suffered general and

**EXHIBIT A**                    24

PLAINTIFFS' COMPLAINT FOR DAMAGES

1    special damages, including but not limited to, mental and emotional distress, physical injuries and

2    bodily harm, pain, fear, humiliation, embarrassment, discomfort, and anxiety and other damages in

3    an amount according to proof.

4        85.    Defendants' acts were willful, wanton, malicious, and oppressive, and done with

5    conscious or reckless disregard for, and deliberate indifference to, Plaintiffs' rights.

6    All of the following claims for relief are asserted against all Defendants.

7    **FIRST CAUSE OF ACTION FOR VIOLATIONS OF THE BANE CIVIL RIGHTS**

8    **ACT (Civ. Code § 52.1)**

9    **(By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)**

10       86.    Plaintiffs incorporate by this reference each and every allegation contained in the

11   foregoing paragraphs as though fully set forth herein.

12       87.    At all times mentioned herein above, Plaintiffs were the subject of harassment,

13   discrimination, threats of violence, intimidation by threat of violence, and violence itself by

14   Defendants LAPD, LA Sheriff, SMPD, and BHPD, individually and as agents and/or employees of

15   Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF SANTA

16   MONICA, AND CITY OF BEVERLY HILLS, due to Plaintiffs' exercise of their constitutionally

17   protected activities of free speech and assembly together with Plaintiffs' actual and/or perceived

18   sex, gender, race, color, religion, national origin, political affiliation, and/or ancestry.

19       88.    Based on information and belief, Defendants utilized slurs to Plaintiffs, including,

20   without limitation, "Bitch," "Slut," "Spicy," "Faggot," and other derogatory terms used with the

21   intention to harass and discriminate on the basis of Plaintiffs' actual and/or perceived sex, gender,

22   race, color, religion, national origin, political affiliation, and/or ancestry.

23       89.    Based on information and belief, Defendants unleashed acts of excessive force

24   including the use of rubber-case bullets, bean bag projectiles, batons, tear gas, sound cannons and

25   other long range acoustic devices against Plaintiffs, in an effort to threaten and effect violence

26   against Plaintiffs on the basis of Plaintiffs' actual and/or perceived sex, gender, race, color, religion,

27   national origin, political affiliation, and/or ancestry.

28       90.    Defendants and each of their actions were in violation of, without limitation,

17

**EXHIBIT A**          25

PLAINTIFFS' COMPLAINT FOR DAMAGES

1  Plaintiffs' First and Fourteenth Amendment rights; as well as California Civil Code §§ 43, 51 *et*

2  *seq.*, and 51.7; California Penal Code §§ 240, 241,242, 243, 422.6, 422.7, 422.8, 1170.75; as well

3  as the California Constitution; and common law interpreting the California Constitution and the

4  statutes enacted by the State of California.

5          91.     The aforementioned acts constitute a violation of the Unruh Civil Rights Act, Civil

6  Code § 51 *et seq.* and the Bane Civil Rights Act, Civil Code § 52.1, as well as the California

7  Constitution and various other state legislative enactments.

8          92.     As a result of Defendants, and each of their wrongful and illegal conduct as alleged

9  herein, Plaintiffs are entitled to reasonable attorneys' fees and costs of said suit and a civil penalty

10  of $25,000.00 as provided in Cal. Civil Code § 52.

11          93.     AS a result of Defendants' wrongful and illegal conduct as alleged herein, Plaintiffs

12  are also entitled to three times their actual damages, which in no case shall be less than $4,000.00.

13          94.     At all relevant times, DOES 1 through 100, as well as officers of Defendants LAPD,

14  LA Sheriff, SMPD, and BHPD, were acting within the course and scope of his employment and/or

15  agency with Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF

16  SANTA MONICA, AND CITY OF BEVERLY HILLS. Defendant officers remained uniformed as

17  and used their actual and/or apparent authority during the time Plaintiffs were subject of

18  harassment, discrimination, threats of violence, intimidation by threat of violence, and violence

19  itself by Defendants based on Plaintiffs' actual and/or perceived sex, gender, race, color, religion,

20  national origin, political affiliation, and/or ancestry. Moreover, the weapons used by Defendants'

21  officers to injure Plaintiffs and to deprive them unlawfully and unreasonably of their freedom of

22  movement were used by Defendants and provided to them as law enforcement officers for all

23  Defendants.

24          95.     Moreover, Defendants LAPD, LA Sheriff, SMPD, BHPD, CITY OF LOS

25  ANGELES, COUNTY OF LOS ANGELES, CITY OF SANTA MONICA, AND CITY OF

26  BEVERLY HILLS aided and/or incited the individual Defendant officers in making Plaintiffs the

27  subject of harassment, discrimination, threats of violence, intimidation by threat of violence itself

28  by Defendants by, without limitation, willfully and knowingly hiring the Defendant officers as law

enforcement and providing them with weapons and/or the opportunity to use their weapons within the course and scope of their employment despite knowing that many Defendant officers harbored violent animus against people with differing political ideologies, as well as differing sex, gender, race, color, religion, national origin, and/or ancestry from their own.

96.    As a direct, proximate, and legal cause of the wrongful conduct of Defendants, and each of them, including DOES 1 through 100, inclusive, Plaintiffs suffered foreseeable, past and future, physical and emotional injuries, general, special and incidental damages in an amount according to proof by in excess of the jurisdictional limit of this case.

97.    As a direct, proximate, and legal cause of the wrongful conduct of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have been required to and did employ physicians, surgeons, and other medical personnel to treat and care for injuries sustained as a result of Defendants' conduct, and incurred additional medical expenses for hospital bills and other incidental medical expenses. Said damages are in a sum the exact amounts of which are not yet known to Plaintiffs, but which amounts will be proved at the time of trial.

98.    As a further direct and proximate result of the acts and omissions of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have suffered and will continue to suffer lost future earnings and income, and/or a diminution of her future earning capacity. Said damages are in a sum the exact amounts of which are not yet known to Plaintiff, but which amounts will be proved at the time of trial.

## SECOND CAUSE OF ACTION FOR VIOLATIONS OF THE UNRUH ACT

### (Civ. Code § 51, *et seq.*)

### (By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)

99.    Plaintiffs incorporate by this reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

100.    At all times mentioned herein above, Defendants, individually and as agents and/or employees of Defendants, discriminated against Plaintiffs and denied full and equal advantages, facilities, and/or privileges to, without limitation, use the public sidewalks and public streets because of their political ideologies and/or because of their actual and/or perceived sex, gender,

**EXHIBIT A**            27

1  race, color, religion, national origin, political affiliation, and/or ancestry.

2        101.    Defendants subjected Plaintiffs to discrimination based on their political ideologies

3  and/or because of their actual and/or perceived sex, gender, race, color, religion, national origin,

4  political affiliation, and/or ancestry, and denied full and equal advantages, facilities, and/or

5  privileges to, without limitation, use the public sidewalks and public streets because Defendants

6  perceived Plaintiffs as standing in opposition to law enforcement and associated their actual and/or

7  perceived sex, gender, race, color, religion, national origin, political affiliation, and/or ancestry as a

8  threat to the existence of their self-claimed "blue lives."

9        102.    The aforementioned acts constitute a violation of the Unruh Civil Rights Act, Civil

10  Code § 51 *et seq*. and the Bane Civil Rights Act, Civil Code § 52.1, as well as the California

11  Constitution and various other state legislative enactments.

12        103.    At all relevant times, DOES 1 through 100, as well as officers of Defendants LAPD,

13  LA Sheriff, SMPD, and BHPD, were acting within the course and scope of his employment and/or

14  agency with Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF

15  SANTA MONICA, AND CITY OF BEVERLY HILLS. Defendant officers remained uniformed as

16  and used their actual and/or apparent authority during the time Plaintiffs were discriminated against

17  and denied full and equal access to, without limitation, the public sidewalk and public streets.

18  Moreover, the weapons used by Defendants' officers to injure Plaintiffs and to deprive them

19  unlawfully and unreasonably of their freedom of movement were used by Defendants and provided

20  to them as law enforcement officers for all Defendants.

21        104.    Moreover, Defendants LAPD, LA Sheriff, SMPD, BHPD, CITY OF LOS

22  ANGELES, COUNTY OF LOS ANGELES, CITY OF SANTA MONICA, AND CITY OF

23  BEVERLY HILLS aided and/or incited the individual Defendant officers in their discrimination

24  against Plaintiffs and in the denial of full and equal advantages, facilities, and privileges of

25  Plaintiffs by, without limitation, willfully and knowingly hiring the Defendant officers as law

26  enforcement and providing them with weapons and/or the opportunity to use their weapons within

27  the course and scope of their employment despite knowing that many Defendant officers harbored

28  violent animus against people with differing political ideologies, as well as differing sex, gender,

**EXHIBIT A**    28

race, color, religion, national origin, and/or ancestry from their own.

105.    As a direct, proximate, and legal cause of the wrongful conduct of Defendants, and each of them, including DOES 1 through 100, inclusive, Plaintiffs suffered foreseeable, past and future, physical and emotional injuries, general, special and incidental damages in an amount according to proof by in excess of the jurisdictional limit of this case.

106.    As a direct, proximate, and legal cause of the wrongful conduct of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have been required to and did employ physicians, surgeons, and other medical personnel to treat and care for injuries sustained as a result of Defendants' conduct, and incurred additional medical expenses for hospital bills and other incidental medical expenses. Said damages are in a sum the exact amounts of which are not yet known to Plaintiffs, but which amounts will be proved at the time of trial.

107.    As a further direct and proximate result of the acts and omissions of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have suffered and will continue to suffer lost future earnings and income, and/or a diminution of her future earning capacity. Said damages are in a sum the exact amounts of which are not yet known to Plaintiff, but which amounts will be proved at the time of trial.

108.    As a result of Defendants, and each of their wrongful and illegal conduct as alleged herein, Plaintiffs are entitled to reasonable attorneys' fees and costs of said suit and a civil penalty of $25,000.00 as provided in Cal. Civil Code § 52.

109.    Furthermore, a result of Defendants, and each of their wrongful and illegal conduct as alleged herein, Plaintiffs are entitled to a civil penalty and exemplary damages as provided in Cal. Civil Code § 52.

### THIRD CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. § 1983: FIRST AMENDMENT

### (By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)

110.    Plaintiffs incorporate by this reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

111.    Defendants' curfews violate the First Amendment's prohibition on laws restricting

**EXHIBIT A**

PLAINTIFFS' COMPLAINT FOR DAMAGES

1    speech. The "principal function of free speech under our system of government is to invite dispute.

2    It may indeed best serve its high purpose when it induces a condition of unrest, creates

3    dissatisfaction with conditions as they are, or even stirs people to anger." *Texas v. Johnson*, 491

4    U.S. 397, 408–09 (1989) (citation and quotation marks omitted). Defendants' curfews dramatically

5    restricted free speech by entirely suppressing all demonstrations occurring after a set time.

6         112.    The First Amendment generally requires the state to punish those few who break the

7    law rather than preventively suppressing everyone's protected speech because of what a few people

8    may do afterwards. "The generally accepted way of dealing with unlawful conduct that may be

9    intertwined with First Amendment activity is to punish it after it occurs … First Amendment

10   activity may not be banned simply because prior similar activity led to or involved instances of

11   violence." *Collins v. Jordan*, 110 F.3d 1363, 1371–72 (9th Cir. 1996). Because an unlawful

12   assembly can be declared only for "assemblies which are violent or which pose a clear and present

13   danger of imminent violence," *In re Brown*, 9 Cal. 3d 612, 623 (Cal. 1973), curfews are too

14   authorized only where the state has no other means to prevent actual or imminent mass violence.

15        113.    To satisfy First Amendment requirements, a curfew must both be narrowly tailored

16   and allow for ample alternative channels of communication. A "restriction that meets the ample

17   alternative requirement can fail the narrow tailoring requirement." *Matter Utah v. Njord*, 774 F.3d

18   1258, 1267–68 (10th Cir. 2014) (citing United States v. Grace, 461 U.S. 171 (1983)). Defendants'

19   curfews fail the narrow tailoring test not only because of their extraordinary geographic scope, but

20   also because the lock-down they order restricts far more speech than necessary to achieve their aim.

21   Defendants may enforce "other laws at [their] disposal that would allow [them] to achieve [their]

22   stated interests," including the criminal laws prohibiting damage to property and, if necessary as a

23   last resort in narrowly defined circumstances, unlawful assembly. *Comite de Jornaleros de*

24   *Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011). Absent actual or

25   imminent mass violence, "[o]bvious, less burdensome means for achieving the [City's] aims are

26   readily and currently available by employing traditional legal methods." *Foti v. City of Menlo Park*,

27   146 F.3d 629, 642–43 (9th Cir. 1998).

28   ///

114.    Here, arrest data establishes that the number of acts of property damage is small in comparison to the amount of nonviolent protest, and the number of acts of violence - by protesters - is far smaller – if not entirely non-existent. Because "there are a number of feasible, readily identifiable, and less-restrictive means of addressing" the Defendants' interests, each of Defendants' curfews are not narrowly tailored to serve those interests. *Comite de Jornaleros*, 657 F.3d at 950.

115.    The curfew orders are not narrowly tailored, insofar as they suppress far more speech, assembly, and other protected First Amendment activity than necessary to deal with any emergency currently in existence. "Banning or postponing legitimate expressive activity because other First Amendment activity regarding the same subject has resulted in violence deprives citizens of their right to demonstrate in a timely and effective fashion." *Collins v. Jordan*, 110 F.3d 1363, 1371–72 (9th Cir. 1996).

116.    Based on the foregoing, Defendants' curfew orders violate Plaintiffs' First Amendment rights.

117.    Plaintiffs have suffered injuries as a proximate result of these violations of their First Amendment rights.

**FOURTH CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. § 1983: FOURTH AMENDMENT**

**(By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)**

118.    Plaintiffs incorporate by this reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

119.    Defendants' above-described conduct violated Plaintiffs' rights to be free from unreasonable seizures, excessive or arbitrary force, and arrest or detention without reasonable or probable cause under the Fourth Amendment to the United States Constitution. Defendants detained, seized, handcuffed, searched their persons and their personnel property.

120.    Defendants used excessive force against peaceful protestors, including Plaintiffs. In particular, Defendants engaged in the indiscriminate use of less lethal weapons and baton strikes contrary to law. Plaintiffs were shot with rubber-cased bullets, struck with batons, and subjected to

tear gas, sound cannons and other long range acoustic devices, causing injuries in a manner that show Defendants applied force unlawfully. Many individuals were struck with rubber-cased bullets in the face, head, shoulder and neck areas. Similarly, individuals suffered baton strikes meant not to compel people to retreat, but to injure and punish them on site. Plaintiffs had guns loaded, cocked and aimed at them in close range with no way of knowing whether Defendants had loaded "non-lethal" ammunition. Plaintiffs incurred severe injuries as a result of Defendants' excessive force.

121.    Additionally, Defendants detained Plaintiffs for hours, tightly zip-tied their hands behind their backs, loaded them into transport buses, and drove them miles from their initial place of police contact. Plaintiffs were left on these transport buses for hours with music such as "Africa" by Toto and "LA Is Burning" by Bad Religion playing in loud volume, and air conditioning blasting to create heightened levels of distress. Plaintiffs were further denied food, water, bathrooms, assistance with fallen masks, and assistance to loosen the zip-tie bindings causing bruising and numbness.

122.    Some Plaintiffs allege being physically assaulted by Defendants during their detainments, including incidents wherein officers and/or agents of Defendants punched Plaintiffs in their pubic region.

123.    Plaintiffs have suffered injuries as a proximate result of these violations of their Fourth Amendment rights.

### FIFTH CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. § 1983: FIFTH AND FOURTEENTH AMENDMENTS

### (By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)

124.    Plaintiffs incorporate by this reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

125.    Plaintiffs had a liberty interest created by California Penal Code § 853.6 to be cited and released for a misdemeanor absent specific information and individualized suspicion that they would immediately repeat the allegedly unlawful conduct if promptly released and not subjected to a prolonged detention. Defendants' conduct deprived Plaintiffs of liberty without due process of law under the Fourteenth Amendment to the United States Constitution. Based on their perceived

**EXHIBIT A**

association with the protests against the continued government-sanctioned killings of Black and Brown men and women at the hands of law enforcement, Plaintiffs were uniformly denied the mandatory "liberty" interested codified at California Penal Code § 853.6 when they were denied individualized assessment and held in custody for hours at a time.

126.   Additionally, The Curfew Orders violate the Constitution's protection for the freedom of movement. "Citizens have a fundamental right of free movement, 'historically part of the amenities of life as we have known them.'" *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (citations omitted); *United States v. Wheeler*, 254 U.S. 281, 293 (1920). State restrictions on this right must both serve a compelling state interest and be narrowly tailored to accomplish that objective. *Nunez*, 114 F.3d at 946.

127.   The Curfew Orders' restrictions on movement are not narrowly tailored. They apply far more broadly than necessary to address any emergency. They also apply to many entirely innocuous types of movement, including outdoor recreation, travel for groceries and family caregiving obligations, and various others. The Constitution does not permit such a draconian deprivation of liberty under these circumstances. *Cf. Nunez*, 114 F.3d at 948 (striking down curfew order because "it does not provide exceptions for many legitimate activities."). Therefore, Defendants' curfew orders violate Plaintiffs' constitutional rights.

128.   Moreover, Both the Fifth and Fourteenth Amendments prohibit deprivations of liberty without "due process." The most essential element of due process is notice. Due process requires that notice "be of such nature as reasonably to convey the required information." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

129.   Due process requires that officers seeking to enforce curfews provide notice to the general population of their intent to do so. *See e.g., In re Juan C.*, 28 Cal. App. 4th 1093, 1097 (Cal. Ct. App.1994) (order permitted arrest only of "such persons as do not obey this curfew after due notice, oral or written, has been given to said persons").

130.   Additionally, Defendants on several occasions issued warning of the impending curfews on the same day the curfew was to take place. **Moreover, on at least one occasion, this warning was issued after the curfew was intended to take effect**. As such, Plaintiffs had no

**EXHIBIT A**

1   notice of their potential violation of the illegal curfew until after the curfew had already taken

2   effect. In addition, the notice of curfew was released on twitter and other social media platforms, as

3   well as facilitated seemingly through the Amber Alert system, in a manner that did not ensure all

4   people, including Plaintiffs, were privy to the information of their potential curfew violations. Not

5   all people have social media. Not all people have smart phones.

6          131.   Based on the foregoing, Defendants' curfew orders violate Plaintiffs' Due Process

7   rights in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

8          132.   Plaintiffs have suffered injuries as a proximate result of these violations of their Fifth

9   and Fourteenth Amendment rights.

10                  **SIXTH CAUSE OF ACTION FOR ASSAULT AND BATTERY**

11          **(By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)**

12          133.   Plaintiffs incorporate by this reference each and every allegation contained in the

13   foregoing paragraphs as though fully set forth herein.

14          134.   Defendants, and each of them, including DOES 1 through 100, inclusive, did

15   commit the assault upon Plaintiffs causing Plaintiffs to have an imminent apprehension of further

16   harmful and offensive contact and great fear and apprehension of immediate bodily harm and

17   threats of deadly force, including without limitation, Defendants engagement in the indiscriminate

18   use of less lethal weapons and baton strikes contrary to law. Plaintiffs were shot with rubber-cased

19   bullets, struck with batons, and subjected to tear gas, sound cannons and other long range acoustic

20   devices, causing injuries in a manner that show Defendants applied force unlawfully. Many

21   individuals were struck with rubber-cased bullets in the face, head, shoulder and neck areas.

22   Similarly, individuals suffered baton strikes meant not to compel people to retreat, but to injure and

23   punish them on site. Plaintiffs had guns loaded, cocked and aimed at them in close range with no

24   way of knowing whether Defendants had loaded "non-lethal" ammunition. Plaintiffs incurred

25   severe injuries as a result of Defendants' excessive force. Upon information and belief, all of the

26   aforementioned was done in an attempt to terrorize and frighten Plaintiffs and/or instigate a

27   physical altercation.

28   ///

**EXHIBIT A**                                                              34

135.   Defendants, and each of them, including DOES 1 through 100, inclusive, did commit the battery upon Plaintiffs by physically attacking and subjecting Plaintiffs to harmful and offensive contact through Defendants' violent and excessive force described herein, as well as the placement of tightly bound zip-tights around Plaintiffs' wrists.

136.   In doing the wrongful acts alleged herein, Defendants did so with the intent to make contact with Plaintiffs' person and/or to place Plaintiffs in apprehension of a harmful or offensive contact, including threats of deadly force.

137.   At all relevant times, DOES 1 through 100, as well as officers of Defendants LAPD, LA Sheriff, SMPD, and BHPD, were acting within the course and scope of his employment and/or agency with Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF SANTA MONICA, AND CITY OF BEVERLY HILLS. Defendant officers remained uniformed as and used their actual and/or apparent authority during the time Plaintiffs were subjected to the aforementioned assault and battery. Moreover, the weapons used by Defendants' officers to injure Plaintiffs and to deprive them unlawfully and unreasonably of their freedom of movement were used by Defendants and provided to them as law enforcement officers for all Defendants.

138.   Plaintiffs did not at any time consent to any of the wrongful conduct of Defendants, and each of them.

139.   Plaintiffs were harmed and offended by Defendants' wrongful conduct described herein.

140.   As a direct, legal and proximate cause of the aforementioned conduct of Defendants, and each of them, including Does 1 through 100, Inclusive, Plaintiffs suffered injuries to their physical health, strength and activity, and shock and injury to their nervous system, all of which said injuries have caused, and continue to cause great physical, mental, and nervous pain and suffering. Plaintiffs are further informed and believed, and thereon allege that said injuries may or will result in permanent disability, all to general damages in an amount which will be stated according to proof, but are in an amount that exceeds the minimum jurisdiction of this Court.

141.   As a direct, proximate, and legal cause of the wrongful conduct of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have been

**EXHIBIT A**

PLAINTIFFS' COMPLAINT FOR DAMAGES

1   required to and did employ physicians, surgeons, and other medical personnel to treat and care for

2   injuries sustained as a result of Defendants' conduct, and incurred additional medical expenses for

3   hospital bills and other incidental medical expenses. Said damages are in a sum the exact amounts

4   of which are not yet known to Plaintiffs, but which amounts will be proved at the time of trial.

5        142.    As a further direct and proximate result of the acts and omissions of Defendants, and

6   each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have suffered

7   and will continue to suffer lost future earnings and income, and/or a diminution of her future earning

8   capacity. Said damages are in a sum the exact amounts of which are not yet known to Plaintiff, but

9   which amounts will be proved at the time of trial.

10        **SEVENTH CAUSE OF ACTION FOR FALSE IMPRISONMENT**

11        **(By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)**

12        143.    Plaintiffs incorporate by this reference each and every allegation contained in the

13   foregoing paragraphs as though fully set forth herein.

14        144.    As alleged herein, Plaintiffs were unlawfully and unreasonably deprived of their

15   freedom of movement by use of threats of force, threats of deadly force, physical force, menace,

16   and unreasonable duress by Defendants, and each of them, including DOES 1 through 100,

17   inclusive, within the course and scope of their employment with Defendants.

18        145.    Individual officers and/or agents of Defendants, individually and as an agent and/or

19   employees of Defendants, unlawfully and unreasonably deprived Plaintiffs of their freedom of

20   movement when Plaintiffs were rendered unable to leave as a result of physical injuries imposed by

21   Defendants, as well as the binding of Plaintiffs' arms with zip-ties and loading onto transport buses

22   for hours at a time.

23        146.    At all relevant times, DOES 1 through 100, as well as officers of Defendants LAPD,

24   LA Sheriff, SMPD, and BHPD, were acting within the course and scope of his employment and/or

25   agency with Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF

26   SANTA MONICA, AND CITY OF BEVERLY HILLS. Defendant officers remained uniformed as

27   and used their actual and/or apparent authority during the time Plaintiffs were subjected to the

28   aforementioned false imprisonment. Moreover, the weapons used by Defendants' officers to injure

**EXHIBIT A**

1   Plaintiffs and to deprive them unlawfully and unreasonably of their freedom of movement were

2   used by Defendants and provided to them as law enforcement officers for all Defendants.

3          147.    Individual officers and/or agents of Defendants, individually and as an agent and/or

4   employees of Defendants, and each of them, including DOES 1 through 100, inclusive, also

5   intentionally summoned, reported, and/or pointed out to law enforcement officers, knowingly,

6   falsely and without cause, that Plaintiffs' actions prior to being beaten and/or detained by

7   Defendants were in violation of law when they were not.

8          148.    As a result of Defendants' wrongful conduct, Plaintiffs were unlawfully and

9   unreasonably handcuffed, detained, confined, falsely imprisoned, and deprived of their liberty

10  against their will because law enforcement personnel were knowingly and falsely informed by

11  Defendants that Plaintiffs' conduct had been unlawful when, in fact, Defendants knew Plaintiffs'

12  conduct, at all relevant times, had been lawful.

13         149.    At no time did Plaintiffs consent to their unlawful and unreasonable detention,

14  confinement, false imprisonment, and/or deprivation of their liberty which was instigated,

15  perpetuated, and carried out by Defendants.

16         150.    As a direct, legal and proximate cause of the aforementioned conduct of Defendants,

17  and each of them, including Does 1 through 100, Inclusive, Plaintiffs suffered injuries to their

18  physical health, strength and activity, and shock and injury to their nervous system, all of which

19  said injuries have caused, and continue to cause great physical, mental, and nervous pain and

20  suffering. Plaintiffs are further informed and believed, and thereon allege that said injuries may or

21  will result in permanent disability, all to general damages in an amount which will be stated

22  according to proof, but are in an amount that exceeds the minimum jurisdiction of this Court.

23         151.    As a direct, proximate, and legal cause of the wrongful conduct of Defendants, and

24  each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have been

25  required to and did employ physicians, surgeons, and other medical personnel to treat and care for

26  injuries sustained as a result of Defendants' conduct, and incurred additional medical expenses for

27  hospital bills and other incidental medical expenses. Said damages are in a sum the exact amounts

28  of which are not yet known to Plaintiffs, but which amounts will be proved at the time of trial.

**EXHIBIT A**

152.   As a further direct and proximate result of the acts and omissions of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have suffered and will continue to suffer lost future earnings and income, and/or a diminution of her future earning capacity. Said damages are in a sum the exact amounts of which are not yet known to Plaintiff, but which amounts will be proved at the time of trial.

### EIGHTH CAUSE OF ACTION FOR NEGLIGENCE

### (By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)

153.   Plaintiffs incorporate by this reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

154.   Defendants, and each of them, had a duty to exercise ordinary or reasonable care in activities from which harm might reasonably be anticipated.

155.   Defendants, and each of them, failed to use ordinary or reasonable care in their interactions with Plaintiffs and negligently caused Plaintiffs to be assaulted, battered, and falsely imprisoned as alleged herein.

156.   At all relevant times, DOES 1 through 100, as well as officers of Defendants LAPD, LA Sheriff, SMPD, and BHPD, were acting within the course and scope of his employment and/or agency with Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF SANTA MONICA, AND CITY OF BEVERLY HILLS. Defendant officers remained uniformed as and used their actual and/or apparent authority during the time Plaintiffs were subjected to the aforementioned assault, battery, and unlawful deprivation of their freedom of movement. Moreover, the weapons used by Defendants' officers to injure Plaintiffs and to deprive them unlawfully and unreasonably of their freedom of movement were used by Defendants and provided to them as law enforcement officers for all Defendants.

157.   Defendants, and each of them, including DOES 1 through 100, inclusive, failed to use reasonable care in the hiring, supervision, and retention of Defendants law enforcement officers as armed police. Defendants knew or should have known of the violent animus harbored by Defendants' law enforcement officers against people with differing political ideologies, as well as differing sex, gender, race, color, religion, national origin, and/or ancestry from their own.

**EXHIBIT A**

PLAINTIFFS' COMPLAINT FOR DAMAGES

158.    As a direct, legal and proximate cause of the aforementioned conduct of Defendants, and each of them, including Does 1 through 100, Inclusive, Plaintiffs suffered injuries to their physical health, strength and activity, and shock and injury to their nervous system, all of which said injuries have caused, and continue to cause great physical, mental, and nervous pain and suffering. Plaintiffs are further informed and believed, and thereon allege that said injuries may or will result in permanent disability, all to general damages in an amount which will be stated according to proof, but are in an amount that exceeds the minimum jurisdiction of this Court.

159.    As a direct, proximate, and legal cause of the wrongful conduct of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have been required to and did employ physicians, surgeons, and other medical personnel to treat and care for injuries sustained as a result of Defendants' conduct, and incurred additional medical expenses for hospital bills and other incidental medical expenses. Said damages are in a sum the exact amounts of which are not yet known to Plaintiffs, but which amounts will be proved at the time of trial.

160.    As a further direct and proximate result of the acts and omissions of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have suffered and will continue to suffer lost future earnings and income, and/or a diminution of her future earning capacity. Said damages are in a sum the exact amounts of which are not yet known to Plaintiff, but which amounts will be proved at the time of trial.

## NINTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)

161.    Plaintiffs incorporate by this reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

162.    The conduct of Defendants, and each of them, including DOES 1 through 100, Inclusive, was extreme and outrageous.

163.    A reasonable person would not expect or tolerate the assault, battery, false imprisonment, and abuse of Plaintiffs by Defendants, nor Defendants' knowledge and callous indifference thereof. Despite appearing for the protest of excessive force and wrongful murders of

31

**EXHIBIT A**

1   black and brown people at the hands of police, Plaintiffs had great trust, faith and confidence in

2   Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear. Plaintiffs never

3   anticipated the use of excessive force through, without limitation, rubber-cased bullets, tear gas,

4   sound cannons and other long range acoustic devices, bean bag pellets, and batons.

5        164.   A reasonable person would not expect or tolerate Defendants' conduct in response to

6   Plaintiffs' exercise of their freedom of speech to voice opposition to the murder of unarmed black

7   and brown people. **<u>A reasonable person would not expect or tolerate the use of excessive force</u>**

8   **<u>to silence opposition to excessive force.</u>** Plaintiffs had great trust, faith and confidence in

9   Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear.

10        165.   A reasonable person would not expect or tolerate the Defendants and their agents to

11   be incapable of supervising and/or stopping participants and members of Defendants from

12   committing the wrongful acts alleged herein. Plaintiffs had great trust, faith and confidence in

13   Defendants, which, by virtue of Defendants' wrongful conduct, turned to fear.

14        166.   Defendants' conduct described herein was intentional and malicious and done for the

15   purpose of causing, or with the substantial certainty that such conduct would cause, the Plaintiff to

16   suffer humiliation, mental anguish, and emotional and physical distress.

17        167.   As a direct and proximate result of the conduct of Defendants, individually, jointly,

18   and/or severally, Plaintiffs sustained severe emotional distress and physical pain, emotional

19   anguish, fear, anxiety, humiliation, embarrassment, and other physical and emotional injuries,

20   damages (both economic and noneconomic), and permanent disability, in the past, present, and

21   future, for which this claim is made. The injuries suffered by Plaintiffs are substantial, continuing,

22   and permanent.

23   **TENTH CAUSE OF ACTION FOR VIOLATIONS OF THE RALPH CIVIL RIGHTS ACT**

24   **(Civ. Code § 51.7)**

25   **(By All Plaintiffs Against All Defendants, Including DOES 1 Through 100)**

26        168.   Plaintiffs incorporate by reference each and every allegation contained in the

27   foregoing paragraphs as though fully set forth herein.

28        169.   At all times mentioned herein above, Plaintiffs were the subject of harassment,

**EXHIBIT A**

1   discrimination, threats of violence, unlawful incarceration, false imprisonment, intimidation by

2   threat of violence, and violence itself by Defendants LAPD, LA Sheriff, SMPD, and BHPD,

3   individually and as agents and/or employees of Defendants CITY OF LOS ANGELES, COUNTY

4   OF LOS ANGELES, CITY OF SANTA MONICA, AND CITY OF BEVERLY HILLS, to

5   Plaintiffs' actual and/or perceived sex, gender, race, color, religion, national origin, political

6   affiliation, and/or ancestry.

7        170.    Based on information and belief, Defendants utilized slurs to many Plaintiffs,

8   including, without limitation, "Bitch," "Slut," "Spicy," "Faggot," and other derogatory terms used

9   with the intention to harass and discriminate on the basis of Plaintiffs' actual and/or perceived sex,

10  gender, race, color, religion, national origin, political affiliation, and/or ancestry.

11       171.    Based on information and belief, Defendants unleashed acts of excessive force

12  including the use of rubber-case bullets, bean bag projectiles, batons, tear gas, sound cannons and

13  other long range acoustic devices against Plaintiffs, in an effort to threaten and effect violence

14  against Plaintiffs on the basis of Plaintiffs' actual and/or perceived sex, gender, race, color, religion,

15  national origin, political affiliation, and/or ancestry.

16       172.    The aforementioned acts constitute a violation of the Ralphs Civil Rights Act, as

17  well as the California Constitution and various other state legislative enactments.

18       173.    At all relevant times, DOES 1 through 100, as well as officers of Defendants LAPD,

19  LA Sheriff, SMPD, and BHPD, were acting within the course and scope of his employment and/or

20  agency with Defendants CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF

21  SANTA MONICA, AND CITY OF BEVERLY HILLS. Defendant officers remained uniformed as

22  and used their actual and/or apparent authority during the time Plaintiffs were subject to

23  harassment, discrimination, threats of violence, intimidation by threat of violence, and violence

24  itself by Defendants based on Plaintiffs' actual and/or perceived sex, gender, race, color, religion,

25  national origin, political affiliation, and/or ancestry. Moreover, the weapons used by Defendants'

26  officers to injure Plaintiffs and to deprive them unlawfully and unreasonably of their freedom of

27  movement were used by Defendants and provided to them as law enforcement officers for all

28  Defendants.

**EXHIBIT A**

174.    Moreover, Defendants LAPD, LA Sheriff, SMPD, BHPD, CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, CITY OF SANTA MONICA, AND CITY OF BEVERLY HILLS aided and/or incited the individual Defendant officers in making Plaintiffs the subject of harassment, discrimination, threats of violence, intimidation by threat of violence itself by Defendants by, without limitation, willfully and knowingly hiring the Defendant officers as law enforcement and providing them with weapons and/or the opportunity to use their weapons within the course and scope of their employment despite knowing that many Defendant officers harbored violent animus against people with differing political ideologies, as well as differing sex, gender, race, color, religion, national origin, and/or ancestry from their own.

175.    As a result of Defendants, and each of their wrongful and illegal conduct as alleged herein, Plaintiffs are entitled to reasonable attorneys' fees and costs of said suit and a civil penalty of $25,000.00 as provided in Cal. Civil Code § 52.

176.    Furthermore, a result of Defendants, and each of their wrongful and illegal conduct as alleged herein, Plaintiffs are entitled to a civil penalty and exemplary damages as provided in Cal. Civil Code § 52.

177.    As a direct, proximate, and legal cause of the wrongful conduct of Defendants, and each of them, including DOES 1 through 100, inclusive, Plaintiffs suffered foreseeable, past and future, physical and emotional injuries, general, special and incidental damages in an amount according to proof by in excess of the jurisdictional limit of this case.

178.    As a direct, proximate, and legal cause of the wrongful conduct of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have been required to and did employ physicians, surgeons, and other medical personnel to treat and care for injuries sustained as a result of Defendants' conduct, and incurred additional medical expenses for hospital bills and other incidental medical expenses. Said damages are in a sum the exact amounts of which are not yet known to Plaintiffs, but which amounts will be proved at the time of trial.

179.    As a further direct and proximate result of the acts and omissions of Defendants, and each of them, including DOES 1 through 100, inclusive, as alleged herein, Plaintiffs have suffered and will continue to suffer lost future earnings and income, and/or a diminution of her future

**EXHIBIT A**

earning capacity. Said damages are in a sum the exact amounts of which are not yet known to Plaintiff, but which amounts will be proved at the time of trial.

## **PRAYER FOR DAMAGES**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For compensatory damages under federal and state law, in an amount to be proven at trial;

2. For past and future economic damages, in an amount to be proven at trial;

3. For past and future non-economic damages, in an amount to be proven at trial;

4. For civil penalties of $25,000.00, as allowed for violations of the The Ralph Civil Rights Act, The Bane Civil Rights Act, and The Unruh Act;

5. For treble actual damages, which in no case shall be less than $4,000.00, as allowed for violations of the The Ralph Civil Rights Act, The Bane Civil Rights Act, and The Unruh Act;

6. For pre-judgment and post-judgment interest, as permitted by law;

7. For costs of suit and attorneys' fees incurred herein; and

8. For such other and further relief as this Court deems just.

DATED: February 26, 2021                    CARPENTER, ZUCKERMAN & ROWLEY


By:
    John C. Carpenter, Esq.
    Matthew J. Singer, Esq.
    Carlos A. Hernandez, Esq.
    Attorneys for Plaintiffs

PLAINTIFFS' COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiff Plaintiffs ALEJANDRA GARCIA, an Individual; CHANCE BROWN, an Individual; STEPHEN THOMPSON, an Individual; ERICK HERRERA, an Individual; KARISSA PEREZ, an Individual; DIANA SALAZAR, an Individual; CHRISTOPHER PEARL, an Individual; BRANDON GAVIRIA, an Individual; AMANDA FLORES, an Individual; OSVALDO PEREZ, an Individual; MARK ESCALANTE, an Individual; KIMBERLY QUITZON, an Individual; KATHERINE GERBASI, an Individual; BRENDON SMITH, an Individual; DANYELLE LEAH SIMS, an Individual; KEVIN JESUS RUIZ, an Individual; ELVER HERNANDEZ, an Individual; PARIS WASHINGTON, an Individual; JACQUELINE WUNG, an Individual; ERIC WILSON, an Individual; AARON WALKER MATIS, an Individual; LACRAMIOARA MUNTEAN, an Individual; KENT VILLA, an Individual; JASMIN RINCON, an Individual; ELIZABETH TOOLEY, an Individual; ARIANA WILLINGHAM, an Individual; ALICIA REYNA, an Individual; ARIA SONORA SILVA-ESPINOSA, an Individual; TIMOTHY FULTON, an Individual; SAMANTHA DE LEON, an Individual; MORGAN FANGUE, an Individual; LESLYE ALANIZ, an Individual; KATHERINE GRAY, an Individual; KATELYNN RHOADS, an Individual; GRACE EVELYN BOWLAND, an Individual; ENRICO MAGHELLI, an Individual; DAVID CARMICHAEL, an Individual; and ALYCIA LOURIM, an Individual, hereby demand a trial by jury on all causes of action.

DATED: February 26, 2021          CARPENTER, ZUCKERMAN & ROWLEY

By: _____
          John C. Carpenter, Esq.
          Matthew J. Singer, Esq.
          Carlos A. Hernandez, Esq.
          Attorneys for Plaintiffs

**EXHIBIT A**

PLAINTIFFS' COMPLAINT FOR DAMAGES